## WATERBURY et al. v. BARRY et al.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

1. BROKERS (§ 86*)—EMPLOYMENT TO SELL—INTEREST IN PROPERTY.

   Evidence *held* to warrant a finding that a broker employed to sell certain property, and on whose representation of value the sale was made, became jointly interested with the purchaser in the purchase during the transaction, without knowledge of such interest on the part of his employers.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

2. BROKERS (§ 34*)—TRUSTS (§ 95*)—EMPLOYMENT TO SELL—INTEREST IN PURCHASE—CONVEYANCE.

   Where a broker employed to sell real estate represented to his employers that the value was much less than it actually was, and during the transaction became equally interested in the purchase with the purchaser,

agreeing to share with him commissions and profits, and to be jointly liable for expenses, and the purchaser had knowledge of the broker's relation to the property, the transaction was void as to the interest of both at the election of the vendor on discovering the facts, and, the purchaser's interest having been conveyed to a bona fide purchaser and mortgaged to a bona fide mortgagee, the broker and purchaser would be regarded as trustees for the vendors and charged with the difference between the purchase price and the value of the property at the time of the trial of an action to vacate the sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 26; Dec. Dig. § 34;* Trusts, Cent. Dig. §§ 145–147; Dec. Dig. § 95.*]

Ingraham, P. J., and Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Suit by Gilbert R. Waterbury and others against Frederick T. Barry and others. From a decree in favor of complainants against Frederick T. Barry, Julia D. Martin, as executrix of John L. Martin, deceased, and Varick D. Martin, they appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Stewart & Shearer (Morgan J. O'Brien, of counsel; George L. Shearer, on the brief), for appellant Barry.

Herrick, Breckinridge & Carney (Philip W. Carney, of counsel), for appellants Martin.

Atwater & Cruikshank (Alfred B. Cruikshank, of counsel), for respondents.

CLARKE, J. This action was brought June 5, 1909, to remedy certain fraud and deceit practiced upon the plaintiffs in the sale of certain premises known as No. 115 East Seventy-First street, belonging to them, which they contracted to sell to one John L. Martin, since deceased, in April, 1906, through the agency of the defendant Barry, and to recover back the premises upon the repayment of the purchase price received by plaintiffs therefor. In case the premises could not be recovered, then plaintiffs sought to obtain an accounting from the defendant Barry and the defendant Julia D. Martin, the executrix of John L. Martin, and Varick D. Martin, her assignee, and to recover appropriate damages and to establish a lien upon the half interest which said Barry now has on said premises in order to secure the amount of said judgment, and for other and proper relief. Defendant Tailer is a bona fide purchaser from Martin of his half interest in the Martin contract of purchase. Defendant the Lawyers' Mortgage Company is a bona fide mortgagee of Tailer of $33,500. Both of these are protected by the judgment, and do not appeal. The trial court held that Barry and Martin were trustees of the property for the plaintiff, and awarded $18,000 as representing the difference between $42,000, which plaintiffs received for the property, and $60,000, the value thereof at the time of the trial.

Franklin Waterbury, now deceased, formerly owned the premises. He died October 22, 1875, leaving a last will and testament, in which, after providing for certain legacies, he devised and bequeathed all his real and personal property, including the said premises, to his wife,

Elizabeth Waterbury, to be held, used, and enjoyed by her during her natural life or so long as she should remain his widow, and directed after her death that all his real and personal property as aforesaid should be distributed among his children or such of them as should survive his wife, and their heirs, share and share alike, and the heirs of such of his children as should die before his wife to take, share and share alike, the share which their father or mother would have taken. On or about the 21st of March, 1906, the widow was still living, although of a very advanced age. . No sale of the property had been contemplated. The defendant Barry, who was a real estate broker, had an office at 641 Madison avenue, near Sixtieth street, and had for eight years made a specialty of buying and selling private houses in the neighborhood of the premises in suit. Barry had a friend, John L. Martin, with whom, he testified, he had had other transactions, 'had gone into deals with him before; that they had been joint purchasers of property, and in the other transactions Martin had taken all the contracts; that Martin had called him up on the telephone and asked whether he had the premises 115 East Seventy-First street for sale. Martin wanted to buy the house. Barry says he did not have the house for sale on his books, but that he proceeded immediately to locate the owners. Thereafter he saw Mr. Frederick L. Waterbury and sub-sequently the other heirs. None of them had ever seen or heard of Barry prior to his getting into communication with them. Barry said that he was a real estate broker, and had a purchaser for this property. He did not at the first interview disclose the purchaser's name. He was told that the heirs did not think that the property could be sold because there was an existing life estate. He said that he thought that could be easily arranged. He mentioned the price of $42,000 and assured them that that was a good price, and all that could be pro-cured; that he would take half of his commissions at that time and wait for the remaining half until the life estate fell in and the deed was actually passed. He introduced Martin as the purchaser, and the price proposed by him was agreed upon. The plaintiffs testified that they relied upon the representations of Barry that that amount was all that could be obtained for the property.

An agreement was entered into under which $350 was to be paid down, $1,650 to be deposited with a title company to be held by it until the deed should pass, when the remaining $40,000 should also be paid. A lease was given to Martin at the annual rental of $1,600 for the period of the life estate of the widow, and the date was fixed for the transfer of the deeds and the final payment due under the agree-ment after the expiration of the life estate. All these matters were concluded, and Barry gave the following receipt:

"Whereas I, Frederick T. Barry, am the broker who negotiated the sale of house and lot No. 115 East 71st Street, New York City, and whereas the title to said house and lot will not be passed until the termination of a life estate therein; now this agreement, witnesseth: That in consideration of the above and for the further sum of $1 to me in hand paid, I, said Frederick T. Barry, agree to accept payment of my commission of $420 as follows: $210 upon the signing of the contract of sale of said house and lot and the remain- . ing $210 when the deed to said house and lot is passed. This agreement is made by said Frederick T. Barry with Elizabeth Ida Waterhouse as agent

for and representing all persons having interests whatsoever in said premises. In witness whereof I have hereunto set my hand and seal this fourth day of April, 1906."

The widow having died, the transaction was finally closed and the deed was delivered April 9, 1909, and Barry was paid the remaining half of his commission, and gave this receipt:

"Received from Atwater and Cruikshank, attorneys for Mary F. Rosenquest, Henrietta C. Newcomb, Elizabeth Ida Waterhouse, Emma A. Waterbury and Gilbert K. Waterbury, the sum of $210, being the balance of my commission of $420 due me as agent for the said parties for the sale of the premises No. 115 East 71st Street, New York City. The other $210 having been paid to me by said parties on or about the 10th day of April, 1906, when the contract of sale was made by the said parties with one John L. Martin. Dated New York, April 21st 1909."

After the deed had passed, plaintiffs learned for the first time the real nature of Barry's interest in the transaction, and that, instead of having acted solely as their agent in the sale of their property, for which he had received from them his commissions as such agent, he had himself been a joint purchaser, owning one-half interest with Martin. The original contract between plaintiffs and Martin bore date the 3d day of April, 1906, was acknowledged on said date by seven of the heirs, and on the 4th of April by the remaining seven, and on the 11th by Martin. On the 9th of April the lease to Martin was made for $1,600 a year. There was an outstanding lease to Dr. Garrison at $1,400 a year, so that Martin paid $200 more to Mrs. Waterbury, the life tenant, then he received from Garrison. On April 5th Mrs. Barry drew a check on the Van Norden Trust Company to the order of her husband for $1,000, which he indorsed to the order of John L. Martin. This was paid through the New York Clearing House on April 10, 1906. Martin gave a paper to Barry, dated April 11, 1906:

"For and in consideration of one dollar ($1.00) I hereby assign to Frederick T. Barry one-half of my interest in my contract to purchase No. 115 East 71st street, also one-half interest in my lease to the above premises.
                                        "John L. Martin."

Martin died in June, 1906, and on the 20th of that month Barry had the assignment of Martin's interest acknowledged by the subscribing witness, and had the paper recorded. Barry gave a check dated May 3, 1906, to the order of Martin for $205, and received from Martin the following receipt:

"New York, May 3rd. 1906. Re No. 115 East 71st street.
"Received of Fred. T. Barry $105 being one-half commission on sale of above house, and $100 being one-half of the difference between the rent from May 1st, 1906, to May 1st, 1907, under the lease of Garrison, and the lease from Waterbury."

On the 11th of April Martin had written to Mr. Barry:
"Re No. 115 East 71st street.
"Dear Mr. Barry: I enclose you an assignment of one-half of my interest in the above property. I think this is sufficient at the present time. If you want anything further let me know."

The court has found that the plaintiffs employed Barry as their broker to secure a purchaser for said premises; that Barry reported and represented that the sum offered was a good and adequate and

sufficient price for said property and the reasonable value thereof, and advised them to accept same, and stated to some of the plaintiffs herein·that he believed $42,000 to be a fair price for the same; that said representations and advice of said Barry to plaintiffs as to the value of said premises were made in the presence and hearing of said John L. Martin, who knew Barry to be acting as such broker for plaintiffs; that said contract of sale was made by plaintiffs upon the advice and in reliance upon the representations of said Barry as their broker; that during said transactions of the purchase and sale of said property the said Barry became and was jointly interested in said property with Martin, and took a half interest therein, without the knowledge of the plaintiffs or of any of them; that Barry demanded and received the usual commission as their broker in said transaction; that he paid to Martin on or about April 5, 1906, $1,000 which was applied in part purchase, and, in further pursuance of their understanding of a joint interest, paid one-half of the first installment of commission and one-half of the installment of the rent between the Waterbury and Garrison leases; that Barry received one-half of the rents and profits and bore one-half of the costs and expenses of said premises from the 9th of April, 1906, to the 7th of April, 1909; that the plaintiffs were ignorant at the time of making said contract of sale that Barry and Martin were jointly interested in the purchase of said premises, or had agreed to divide the commissions of Barry as such broker or to share the profits and losses in said purchase.

There was admitted in evidence, as against the defendant Martin only, the entry upon the stub of John L. Martin's check book:

"F. T. Barry, $1,000 for one-half interest in 115 East 71st, and also one-half com. 115 East 71st, $105, one-half of difference of rent 115 East 71st, May 1/06 to May 1/07, between Dr. Garrison and Mrs. Waterbury, $100."

And an affidavit of Varick D. Martin, sworn to April 9, 1909, in which he averred:

That he was the son of the late John L. Martin. "That I was familiar with my father's business before and at the time the said contract was made, and that I knew the various dealings and transactions which led up to the making of the said contract, and that I know one Frederick T. Barry, real estate agent, at 641 Madison avenue, who was the broker employed by the Waterbury estate to sell the said property. That of my own knowledge I know that previous to the said contract having been entered into that said Barry and my father made an oral agreement by which each of them was to become an equal partner in the purchase of the said premises, and that my father and said Barry were to share all brokerage, commissions, profits, losses, and expenses in the transaction, and that it was in pursuance of said agreement that said contract for the purchase of said premises was made. I further state that the said Barry paid his one-half of the deposit of two thousand ($2,000) dollars made at the time of the signing of said contract, and that he paid my father the sum of one hundred and five (105) dollars being one-half commission received by the said Barry for the sale of the said premises and one hundred (100) dollars being one-half of the difference between the rent from May 1st, 1906, to May 1st, 1907, under the lease of Garrison and the lease from Waterbury. I further state that I have collected the rents from the said premises from the said 1st day of July, 1906, to the 1st day of April, 1909, and that I have always paid to the said Barry one-half of the profits arising from the said lease. I know that said Barry had half interest in the purchase of the said premises, and agreed to give my father

one-half of the commissions from same, from various statements made to me by the said Barry and by my father; that I am assignee of all the right, title, and interest which my father had in said premises; and that I claim the one-half of the commissions still due from the sale of same, amounting to one hundred and five (105) dollars."

And also certain letters to the same effect.

The court found that Julia D. Martin, the widow of John L. Martin, to whom he had left all his property by his last will and testament, assigned her interest in the said contract to her son, Varick D. Martin, and that said assignment was received by him with knowledge of the circumstances under which said agreement was made and of the interest of said Barry in said transaction; That Barry still retains one-half interest in said premises; and that plaintiffs have elected to avoid, rescind, and cancel the said conveyance. The court also found that the value of the property at the time of said contract of sale for $42,000 was $55,000 or thereabouts, and that at the time of the trial the property was worth $60,000.

[1] All of these findings are supported by the evidence. None of them are against the evidence or the weight thereof. The defendant Barry admits the payments found to have been made by him, and admits that he was the agent of the plaintiffs who conducted the sale of their property as their broker, and received his commissions from them therefor, admits that he acquired a half interest in the contract of sale made ostensibly to Martin, and admits that he still owns the one-half interest in the property, but he claims that this one-half interest was not acquired until after the transaction was closed and his services as broker had been completed and all duty that he owed to the plaintiffs by virtue of his relation with them as broker had ceased, and that under these circumstances, the confidential or fiduciary relation having ceased, he had a perfect right thereafter to purchase a half interest in the contract which had been negotiated by him with Martin.

We have carefully considered all the matters urged upon us by the appellant Barry in support of this claim, but the check for $1,000 which he indorsed to Martin bore date April 5th, while the lease to Martin was dated the 9th, and the contract was acknowledged by him on the 11th, and, considering all of the evidence and the exhibits, we are satisfied that the learned Special Term was justified in finding that during said transaction of the purchase and sale of said property the said Barry became and was jointly interested therein with Martin.

[2] In Murray v. Beard, 102 N. Y. 505, 7 N. E. 553, Huger, C. J., said:

"An agent is held to uberrima fides in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal as to forfeit every right to compensation for services. * * * It is an elementary principle that an agent cannot take upon himself incompatible duties and characters, or act in a transaction when he has an adverse interest or employment."

In Sage v. Culver, 147 N. Y. 241, 247, 41 N. E. 513, 514, the court said:

"When it appears that the trustee or officer has violated the moral obligation to refrain from placing himself in relations which ordinarily produce a conflict between self-interest and integrity, there is in equity a presumption against the transaction which he is required to explain."

And in Carman v. Beach, 63 N. Y. 197, Andrews, J., said:

"The defendant was entitled to the disinterested efforts and judgment of the plaintiff in the matter of the agency, and if the plaintiff had procured a purchaser, for whom he was also acting as agent, without disclosing the fact to the defendant, it would have constituted such a fraud as would have precluded him from receiving any compensation."

In Clark v. Bird, 66 App. Div. 284, 72 N. Y. Supp. 769, the court said:

"Where one undertakes to act as agent for another in the sale of property, the rule is inflexible that he violates his trust by becoming the purchaser from his principal, unless the assent of the latter is established by most convincing proof [citing from Story on Agency in section 211]. 'Hence it is well settled (to illustrate the general rule) that an agent employed to sell cannot himself become the purchaser; and an agent employed to buy cannot himself be the seller. So an agent employed to purchase cannot purchase for himself.' "

The language of Judge Rapallo in Bain v. Brown, 56 N. Y. 285, is especially apposite:

"If such a transaction as is exhibited by the undisputed facts of this case could stand for a moment, the well-established rules that an agent to sell cannot himself become a purchaser, and that one who undertakes to act for another in any matter shall not in the same matter act for himself, would be so easy of evasion, and breaches of them so readily covered up by contrivance, that they would cease to be of any practical value. When agents and others acting in a fiduciary capacity understand that these rules will be rigidly enforced, even without proof of actual fraud, the honest will keep clear of all dealings falling within their prohibition, and those dishonestly inclined will conclude that it is useless to exercise their wits in contrivances to evade it. Thus only can these rules be made useful in promoting fair dealing on the part of agents and trustees and preventing frauds."

When Barry became a purchaser for himself, his purchase was void at the election of the vendors on discovery of the facts, and when Martin joined Barry in the scheme, knowing Barry's relation to the transaction, Martin's purchase of a half interest was equally void. That Martin was particeps in the transaction is clear; that is, he received from Barry one-half of the proceeds of Barry's misconduct.

The judgment appealed from should be affirmed, with costs to the respondents.

McLAUGHLIN and SCOTT, JJ., concur.

INGRAHAM, P. J. I do not think the relation between the defendant Barry and the vendors of the property at the time the defendant Barry acquired an interest in it justified a finding that Barry violated any obligation he was under to the vendors. He went to the vendors as representing a purchaser. At that time the undisputed evidence is that he had no other interest in the property and acted in no other capacity. After the sale was arranged and the vendors had executed an agreement of sale, at the request of the purchaser he became interested in the purchase; but at the time he became interested

nothing remained to be done to carry out the transaction. The vendors relied upon their own information as to the value of the property, and not upon Barry, and the fact that they subsequently paid him a commission for bringing to them a purchaser does not, I think, justify a finding that he at any time violated any duty he owed to the vendors. Unless we are prepared to hold that a person who occupies this relation of a broker can never afterwards be interested in property the sale of which he has negotiated, I do not see that this judgment can be sustained.

But, whatever may be said as to Barry, it seems to me that upon no principle can the estate of Martin, the vendee, be held liable. Martin occupied no relation to the vendors except as the purchaser of their property. Barry had been his representative, and had procured a contract for the purchase of the property by Martin. Certainly upon no principle can it be said that Martin was guilty of any fraud, deceit or violation of a trust which justified the court in awarding a judgment against his estate. There is not the slightest suspicion of evidence that Martin obtained any advantage from the vendors by reason of his subsequent transaction with Barry.

Assuming, however, that a judgment could be sustained determining that Barry held whatever property he acquired in trust for the vendors, there was no justification for awarding a money judgment against Barry and the Martin estate. Barry still retains the interest in the property that he acquired, and the only judgment to which the plaintiffs could be entitled was a determination that Barry's interest in the property was held in trust for the vendors, and that he was liable to account for any profits that he made out of the transaction. As no profits had been made, no money judgment could be awarded. It is possible that the plaintiff would be entitled to a judgment requiring Barry to reconvey to the vendors the interest in the property acquired by him upon payment by the vendors to Barry of one-half of the price which they had received for the property, and also compel Barry to account for any rents that he had received over and above the cost of carrying the property; but the judgment in its present form would seem to me to be opposed to all the principles that have been applied in actions of this kind.

I therefore dissent.

LAUGHLIN, J., concurs.