RYAN v. GRISSINGER et al.

(Supreme Court, Special Term, Erie County. March, 1912.)

1. CORPORATIONS (§ 206*)—ACTION BY STOCKHOLDER IN BEHALF OF CORPORATION.

Where a corporation, after request by a stockholder, declined to bring suit upon a cause of action in its favor, the stockholder could sue thereon in the interest and for the benefit of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 791–796; Dec. Dig. § 206.*]

---

2. CORPORATIONS (§ 314*)—OFFICERS—LIABILITY FOR PERSONAL PROFIT.
   Where the president of a corporation undertakes to procure certain property for it at a certain price and acquires the property at a less price and retains the difference for himself, he is liable to the corporation for such difference; his fiduciary relation to the corporation precluding his making a personal profit from such transaction.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1393–1398, 1400; Dec. Dig. § 314.*]

3. PLEADING (§ 34*)—CONSTRUCTION.
   A complaint should be construed liberally in favor of the pleader, and be supported by every reasonable and fair intendment.
   [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 66–75; Dec. Dig. § 34.*]

Action by Michael B. Ryan, on behalf of himself and of other stockholders of the Automatic Chain Company, against Elwood Grissinger and another. Demurrer to complaint by defendant Grissinger. Overruled.

Joseph G. Dudley, in support of demurrer.
William Burnett Wright, opposed.

WHEELER, J. [1] The defendant Grissinger contends the complaint fails to state a cause of action. The complaint alleges that the defendant the Automatic Chain Company is a corporation; that the plaintiff is a stockholder therein; that the plaintiff has demanded that the corporation institute and prosecute this action, which it has declined and omitted to do. The plaintiff therefore had the right to bring this action, which is prosecuted in the interest and for the benefit of the corporation. Sage v. Culver, 147 N. Y. 246, 41 N. E. 513; Kavanaugh v. Commonwealth Trust Co., 181 N. Y. 121, 124, 73 N. E. 562; O'Connor v. Virginia Passenger & Power Co., 184 N. Y. 46–52, 76 N. E. 1082; Miller v. Barlow, 78 App. Div. 331, 336, 79 N. Y. Supp. 964.

[2] The question presented is whether the complaint states a cause of action against the defendant Grissinger.

The complaint is long, and it will be unnecessary to more than summarize its allegations so far as the alleged acts of Grissinger are concerned. It alleges: That, by the certificate of incorporation of the Automatic Chain Company, Grissinger was named and made one of its directors, and at the first meeting of said board elected president of the company.

"That on or about the 26th of April, 1907, the said defendant, Elwood Grissinger, while such president and director, offered to the board of directors of the defendant, Automatic Chain Company, to procure for such company the right to use throughout the United States" certain patented machines for making chains, "in consideration of the payment for these said rights of $30,000 in cash and 1,200 shares of the common stock of the said defendant Automatic Chain Company."

That on the 17th of June, 1907, said directors voted to accept said offer of said Grissinger. The complaint further alleges that on said 26th day of April, 1907, the plaintiff and one James Coulter were the owners of said patented inventions, for which said Grissinger,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on or about the 27th of February, 1907, had offered the plaintiff $25,-000 in cash and 600 shares of the common stock of the defendant chain company.

It will be here noted that the offer to the plaintiff preceded the offer to the defendant chain company; that to the plaintiff being made in February, and that to the chain company in April. The complaint further alleges that Grissinger, at the time he made the offer to the plaintiff, stated that the offer of $25,000 in cash and 600 shares of stock was the best and highest price and consideration the chain company would pay for the sale and assignment of the patented rights which were the subject of negotiation between them. The complaint then alleges that on June 3, 1907, the plaintiff and said Coulter transferred said rights to said Grissinger for the sum of $25,000 in cash and 600 shares of the common stock of the defendant chain company, and that on the same day Grissinger transferred to the chain company the rights so acquired, for which he (Grissinger) received from said chain company $30,000 in cash, and 1,200 shares of the common stock of said defendant, and from the consideration so paid, retained for himself $5,000 in cash, and 600 shares of said stock; that the plaintiff subsequently discovered the facts as set forth, and demanded the return to said company of the cash and stock retained; and that the chain company bring action for its recovery. This the company has failed to do. Hence this action, which demands judgment that the defendant Grissinger return the cash and stock taken to the corporation.

Stripped of all legal verbiage, the complaint alleges that Grissinger, while the president and one of the directors of the chain company, offered, not to *sell* to the company the patent rights in question, but to *"procure"* such rights for his company; such rights then being the property of the plaintiff and said Coulter. In other words, Grissinger offered to, in substance, act as purchasing agent for his corporation in procuring the patent rights in question, and offered to do this for $30,000 in cash and 1,200 shares of stock, when he had previously offered the plaintiff but $25,000 in cash and 600 shares of stock for the same property; that subsequently he did acquire for the corporation said property at the price of $25,000 cash and 600 shares of stock, but, instead of giving the chain company the benefit of the bargain made with the plaintiff, received from the chain company $30,000 in cash and 1,200 shares of stock, retaining for himself a profit out of the transaction of $5,000 in money and 600 shares of stock. We can place no other construction on the allegations of the complaint than those thus summarized, and, if true, a clear cause of action exists against the defendant.

[3] The complaint should be construed liberally in favor of the pleader, and every reasonable and fair intendment is to be made in support of the pleading. Tew v. Wolfsohn, 174 N. Y. 274, 66 N. E. 934; Sage v. Culver, 147 N. Y. 241, 41 N. E. 513, and cases cited.

The principles of law which govern the conduct of directors and officers of corporations are so well understood, and have been so re-

peatedly enumerated in many decisions of our courts, that it will not be necessary to cite many authorities to show that the complaint sets forth a good cause of action.

The rule of law applicable to cases like that alleged in the complaint is well stated by Judge O'Brien in the case of Redhead v. Parkway Driving Club, 148 N. Y. 474, 42 N. E. 1047, where a member of an incorporated social club acted as a member of a purchasing committee for his club. The learned judge said:

"A member of a corporation who acts in its behalf, either as a director or member of a purchasing committee, though he may not be a trustee in a strict sense, assumes towards the corporation relations of a confidential and fiduciary character. By his appointment as a member of the committee and his acceptance of the duties implied the plaintiff became intrusted with powers and charged with duties to be exercised and performed for the common and general interests of the corporation, and not for his own private interests or that of the firm of which he was a member. In purchasing the land the plaintiff could not reserve a benefit to himself or his firm without an abuse of the trust and confidence reposed in him by the club. The law will enforce fidelity on the part of a person who acts for others by imposing upon him a disability, either partial or complete, to deal in his own behalf or for his own private interests in respect to a matter involving such trust or confidence. Duncomb v. N. Y. H. & N. R. R. Co., 84 N. Y. 198."

To the same effect are the cases of Sage v. Culver, 147 N. Y. 247, 41 N. E. 513; Jacobson v. Brooklyn Lumber Co., 184 N. Y. 152, 76 N. E. 1075; Davids v. Daniels, 135 App. Div. 206, 120 N. Y. Supp. 350; Waterbury v. Barry, 145 App. Div. 781, 130 N. Y. Supp. 517.

The defendant, as president and director of the chain company, occupied a fiduciary relation to it. He was bound to act for the corporation and not for himself. He owed it to the corporation to give to it the benefit of the best bargain he could make for the purchase of the patent rights sought to be acquired. It is no answer to the charge that the company stood willing to pay $30,000 in cash and 1,200 shares of stock. If these rights could be acquired for less, it was the defendant's duty to purchase for the lesser price. He certainly was forbidden by every rule of law and fair dealing from making a profit for himself out of the transaction. Even had the board been fully advised of all the facts that he could obtain the property for $25,000 cash and 600 shares of stock, and they assented to paying $30,000 cash and 1,200 shares of stock for what could be bought for less, still not only would the defendant be liable to account for the profit realized in the manner charged, but the directors who knowingly assented and aided in carrying out the deal would become personally liable as well. Persons occupying relations of officers and directors of corporations cannot serve two masters, and, above all, they cannot use their positions to deal with themselves. The doctrine of the utmost good faith and fair dealing by officers of corporations is the healthy rule of law which courts must enforce.

The demurrer is overruled, with costs, with leave to answer within 20 days after service of interlcoutory judgment and notice of entry, upon payment of such costs to be taxed.

So ordered.