BERTHA I. HOWARD and HERBERT H. HOWARD, Respondents, *v.* JAMES MCCREDIE, Appellant.

Third Department, July 7, 1921.

**Principal and agent — action to recover commissions for selling real property — real estate broker not disclosing name of prospective purchaser to owner — broker not entitled to commission where sale made by owner to same person at lower price — refusal to give instruction constituting reversible error.**

Where a real estate broker fails to disclose to the owner the name of a prospective purchaser, and the owner sells the property at a reduced price to the same purchaser without knowledge that the broker had entered into negotiations with said purchaser, the broker has failed to discharge his duty and has not performed his contract, and is not, therefore, entitled to recover commissions on the sale.

Accordingly, where, in an action by such broker to recover commissions, there was a conflict in the testimony as to whether or not he had disclosed the name of the prospective purchaser, it was reversible error for the court to refuse to charge, in behalf of the defendant, that if the jury accepted the defendant's version the plaintiff could not recover.

APPEAL by the defendant, James McCredie, from a judgment of the County Court of the county of Albany in favor of the plaintiffs, entered in the office of the clerk of said county on the 14th day of February, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 19th day of February, 1921, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Rosendale, Hessberg, Dugan & Haines* [*P. C. Dugan* of counsel], for the appellant.

*Louis F. O' Neill*, for the respondents.

COCHRANE, J.:

Plaintiffs are real estate brokers and bring this action to recover commissions for their services in selling for the defendant certain real estate in the city of Albany. The property had been for several years in the hands of another broker named Douglas. Augustus Ziehm, who eventually became the purchaser of the property, and his son, Fred Ziehm, had on different occasions prior to April, 1920, interviewed Douglas concerning it but their interviews never proceeded further than securing the amount of the selling price which was $35,000. After those interviews and about April 1, 1920, one of the plaintiffs, Herbert H. Howard, solicited of the defendant the agency for the sale of the property. The defendant authorized him to sell it for $35,000, agreeing to pay him three per cent commissions if he made the sale. Howard thereafter through Mr. O'Neill, an attorney, got into communication with Fred Ziehm and the three inspected the property. Fred Ziehm represented himself as the prospective purchaser but apparently needed the pecuniary assistance of his father and an arrangement was made whereby the four men subsequently inspected the property. At the conclusion of this latter inspection Augustus Ziehm said to Howard: " We will talk this matter over and we will let Mr. O'Neill know and he can take the matter up with you." Fred Ziehm

thereafter, as the plaintiffs claim, informed Mr. O'Neill that his father would render the necessary assistance and that he would pay $10,000 in cash for the property and give a mortgage thereon for $25,000. Howard thereupon, about May tenth, delivered to the defendant a written proposition offering $35,000, of which $10,000 was to be in cash and $25,000 to be a first mortgage payable in three years with interest at six per cent per annum payable semi-annually. The written proposition did not disclose the name of the proposed purchaser. The defendant on looking at the paper said: " I wish you would give the names of your parties to Mr. Douglas and if we make any deal under those terms, or any other terms, I will pay you your commission." The following day Howard had an interview with Douglas in the office of the latter to whom in the meantime the defendant had sent the written proposition of Howard. What took place at that interview is the subject of serious dispute between Howard and Douglas, the importance of which becomes great in the light of the charge of the court to the jury to which reference will hereafter be made. Howard testifies that in response to the request of Douglas for the name of the prospective purchaser he gave him the names of Fred Ziehm and his father. Douglas testifies in regard to this interview as follows: " I stated to him [Howard] that this property had been for sale for a long time, and there had been any number of inquiries for the property, and asked him if he was positive that the persons for which he made the offer hadn't talked with me in reference to it. He said that he was positive, that the people that he represented was from out of Albany, and he knew that they hadn't talked with me. I said to him we had talked over the proposition, and it seemed to be a good one, and if he would present his customer that we would in all probability accept the proposition." Douglas further testifies that on two subsequent occasions before the sale he met Howard on the street and asked him what there was in reference to his proposition and that the latter replied that he had not heard from his people and that he never disclosed the name of his proposed purchaser. On May nineteenth defendant contracted to sell the property through Douglas to Augustus Ziehm for $30,000. There is no evidence that the defendant or Douglas

at that time knew of the plaintiffs' negotiations with either Fred Ziehm or his father except as Howard testifies that he gave Douglas their names in the office of the latter. It does not appear that the plaintiffs had any communication with either of the Ziehms after that interview with Douglas. Both the Ziehms deny that they authorized Mr. O'Neill to make an offer through Howard of $35,000 or any other amount. The deed was executed June eighth and the defendant paid Douglas $900 as his commissions for making the sale.

The plaintiffs had, as they claim, an offer from Ziehm to buy the property for $35,000. That was the asking price by the defendant. The latter sold the property to Ziehm for $30,000. Clearly, it was the duty of the plaintiffs to make known to the defendant the fact that Ziehm had offered the larger price. The plaintiffs claim to have made such disclosure through Douglas. Douglas strenuously denies this. The defendant made several efforts to have the court instruct the jury that there could be no recovery by the plaintiffs unless they gave to Douglas as they claimed the name of their prospective purchaser. Requests to charge this proposition were made in various forms and denied. Finally the request was made as follows: " I ask your Honor to charge that if the jury accept the version given by Mr. Douglas upon that question, then their verdict must be in favor of defendant." This was refused, except as already charged. Nowhere in the main charge or elsewhere had the court instructed the jury in such a manner as to render these several requests irrelevant or unnecessary. These refusals to charge present reversible error. As we have seen, Douglas denied that Howard gave him the name of his customer although three times requested. Under the charge of the court to the jury if this judgment is sustained it must be on the assumption that Douglas is giving the correct version of the transaction in this respect because the jury were specifically permitted to render a verdict for the plaintiffs even though they found as Douglas testified that the plaintiffs refused to disclose to him their customer and it is impossible to determine from the record that the jury did not so find. If the sale had ultimately been made to Ziehm for the original asking price of $35,000, perhaps the refusals to charge as requested would have been

immaterial. But the sale having been made at a reduced price it was clearly the duty of the plaintiffs before they were entitled to their commissions to put the owner in possession of all the facts which they possessed so that he might act intelligently and with full knowledge of the possibilities of making a better sale. " The general rule is well settled that a broker must act with entire good faith towards his principal, and he is bound to disclose to his principal all facts within his knowledge which are or may be material to the matter in which he is employed, or which might influence the principal in his action; and if he has failed to come up to this standard of duty he cannot recover. * * * The true identity of the purchaser also may be sometimes a material fact which ought to be known to the principal, since such knowledge might affect his action; and illustrations of this are to be found in the reported cases." (*Veasey* v. *Carson*, 177 Mass. 117, 120, 121; 4 R. C. L. 272, 273.) The defendant made the sale in ignorance of the fact that his agents had been offered $5,000 more by the purchaser than he paid. If the defendant had known that fact no one can say that he would not have stood out and procured the additional $5,000. Furthermore, if the defendant had been informed that Ziehm was the customer of the plaintiffs he would have been in a position to protect himself against payment of commissions to both brokers. If, as the jury may have found under the instructions of the court, the plaintiffs refused to disclose their customer after being specifically requested to give his name they have placed their employer at a decided disadvantage. In that event they have failed to discharge a duty they owed him and such failure constitutes a non-performance of their contract and consequently their commissions have not been earned.

It follows that the judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.