EDMUND C. WENDT, Appellant, *v.* PAUL FISCHER and Others, Respondents.

First Department, January 15, 1926.

Brokers — real estate broker — action to recover commissions paid to brokers and profits realized by purchaser — one of brokers was president and treasurer of corporation purchasing property — act of brokers in merely informing plaintiff that property was to be purchased by client of theirs did not disclose brokers' adverse interest — plaintiff can hold brokers and purchaser as trustees of property or proceeds and any profits derived therefrom.

An owner of real estate is entitled to recover commissions paid to brokers and to hold brokers and the purchaser as trustees of the property or proceeds and any profits realized therefrom, where it appears that one of the brokers was the president, treasurer and manager of the purchaser and, therefore, had an

adverse interest to the owner. The mere fact that the brokers told the owner that the property was to be sold to one of their clients did not disclose to the owner the adverse interest of the brokers.

MARTIN, J., dissents.

APPEAL by the plaintiff, Edmund C. Wendt, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 15th day of December, 1924, upon the decision of the court rendered after a trial at the New York Special Term.

*Beekman, Bogue, Clark & Griscom* [*Edward K. Hanlon* of counsel; *Henry B. Hodge* and *William W. Wilson* with him on the brief], for the appellant.

*San, Ittelson & Van Voorhis* [*I. Maurice Wormser* of counsel], for the respondents.

FINCH, J. The question presented for determination is whether the plaintiff may complain of the sale of certain real property made by him through a firm of brokers composed of defendants Fischer, Hammond and Heinrich, since deceased, and recover the commissions paid to said brokers and the profits realized by the defendant Hosmer Realty Corporation, to whom the property was sold, upon a resale of the same.

The plaintiff was the owner of an apartment house. He employed the aforesaid brokers to sell the same. The plaintiff's property was sold by the aforesaid brokers to the defendant Hosmer Realty Corporation, and a little over four weeks thereafter it was resold by said corporation at a profit of $7,500. Some nine months previous to the sale by plaintiff of the property in question, the Hosmer Realty Corporation had been organized on behalf of one Mrs. Pelletreau for the purpose of dealing in real estate. Of this corporation the defendant Hammond was the president and treasurer and the record owner of the capital stock, of which Mrs. Pelletreau was the beneficial owner. Mrs. Pelletreau was the *fiancée* of the defendant Hammond, and the Hosmer Realty Corporation was named after Hammond's middle name. The plaintiff was informed by his brokers that the property was being sold to a client of theirs. He was not informed of the name of the transferee, however, which was left blank in the deed. The transfer was made to an individual who was used as a dummy, and subsequently was transferred to another dummy, and then to the Hosmer Realty Corporation. Mrs. Pelletreau financed the purchase, making checks payable to the Hosmer Realty Corporation, who in turn made payments to the plaintiff by checks of the brokers' firm. It also appears that at the request of the defendant Hammond,

his copartner Heinrich loaned $700 toward the down payment on the contract for the purchase of the property.

The trial court has found that there was in fact no bad faith on the part of the defendants; that the offer submitted to the plaintiff and accepted by him was the best offer obtainable, and there is evidence that the defendants had advertised the premises and had submitted the proposition to other brokers. There is testimony by one Robins, on behalf of the plaintiff, that he had submitted a better offer to the defendant brokers. It appears, however, that Robins was employed by the defendants, was subsequently discharged, and that he contemplates an action against the defendants to recover commissions based on the alleged offer, so that he was a highly interested witness. The court also found as a fact that the defendant brokers had informed the plaintiff that the property was being sold to a client of theirs. The defendants testified that they had informed the plaintiff that it was to be sold to a very close client, but the court found that the plaintiff was advised that the sale was merely to a client.

Assuming that these issues of fact have been properly decided by the trial court and confining ourselves to the undisputed facts in the record that Hammond was the president and treasurer and manager of the defendant Hosmer Realty Corporation, the questions are, *first*, whether the disclosure that the sale was to a client of the defendants was a notification to the plaintiff of an adverse interest in the brokers, and, *secondly*, whether the aforesaid facts render the sale voidable as a matter of law.

It needs no argument to demonstrate that the mere fact that the plaintiff was informed that the sale was being made to a client of the brokers was not equivalent to a notification that the brokers were representing conflicting interests. Many sales are made by brokers to persons to whom the brokers are accustomed to offer property, and who from time to time purchase from the brokers; so that the mere notification that the sale was to a client of the brokers would convey no meaning of conflicting interests, and would mean a very different thing from a notification of a case of double employment, meaning thereby an employment to represent both sides. In such a case as the one at bar, where there is a double employment, and it is sought to be excused by claiming that the seller was notified of it, the obligation resting on the broker is to make a full disclosure of all the facts to his seller, so that the latter may know in no uncertain terms of the other employment of the broker, leaving it to the determination of the seller whether or not the seller is satisfied to be represented by his agent under such circumstances. As was said in *Howard* v.

*McCredie* (198 App. Div. 49): "The general rule is well settled that a broker must act with entire good faith towards his principal, and he is bound to disclose to his principal all facts within his knowledge which are or may be material to the matter in which he is employed, or which might influence the principal in his action; and if he has failed to come up to this standard of duty he cannot recover. * * * The true identity of the purchaser also may be sometimes a material fact which ought to be known to the principal, since such knowledge may affect his action * * *."

In *Murray* v. *Beard* (102 N. Y. 505, 508) the court, by RUGER, Ch. J., said: "An agent is held to *uberrima fides* in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal, as to forfeit any right to compensation for services."

The respondent urges that the sale in question was in effect a sale to Mrs. Pelletreau and not a sale to the Hosmer Realty Corporation, and contends that the relation of *fiancée* which Mrs. Pelletreau bore to the defendant Hammond was not sufficient in itself to give the plaintiff just cause to complain.

It is not necessary, however, to place the decision upon this relation between the defendant Hammond and Mrs. Pelletreau, because, as already noted, the undisputed fact is that the sale was made to a corporation of which the defendant Hammond was the president, treasurer and manager. The defendant Hammond, when called as a witness by the plaintiff, stated that he was the president and treasurer of this corporation from the time of the organization of the corporation, and still was at the time of the trial. According to the testimony of Mr. Hammond, he also personally managed the property of the Hosmer Realty Corporation. As to another property on Broadway, owned by the Hosmer Realty Corporation, he testified that he collected the rents and made all the payments for the operation of the Broadway property for said corporation.

The trial court refused to make a finding submitted by the plaintiff setting forth these facts, saying: "Refused, except as found in plaintiff's finding of fact number one," apparently meaning thereby, defendant's finding of fact number one. In this finding of fact number one of defendant's there is no finding, however, that Hammond was the president and treasurer and manager of the Hosmer Realty Corporation. In view of the fact that Hammond so testified, we must consider this case on the basis of these facts, namely, that Hammond was the president and treasurer and

manager of the Hosmer Realty Corporation. Under these facts this case cannot be distinguished in principle from the case of *Carr* v. *National Bank & Loan Co.* (167 N. Y. 375), where the plaintiff went into the bank and requested the president of the bank, as her agent, to invest her money for her, and without her knowledge he sold to her certain securities belonging to the bank. It was held that she might set aside this sale and recover her money without proof of fraud. The court (at p. 379) said: " The plaintiff supposed that she had enlisted the disinterested services of Sherman in the investment of her moneys, and, relying upon what he told her, confided them to him; whereas, in fact, he was acting for the bank, of which he was president and manager, in disposing, at a profit, of a series of securities, which it had acquired. He was acting for the defendant as a seller of the bonds and for the plaintiff as an intending purchaser, and a fraudulent motive was not necessary to be proved, either on the defendant's part, or on that of the common agent, for, in the view of a court of equity, there was such fraud in law as to make the contract a voidable one, at the election of the plaintiff. The plaintiff has been made to suffer her loss through misplaced confidence in one whom she believed to be devoted to her interests, while, at the time, he was acting for the defendant's, and the legal theory of her right to equitable relief, by the way of rescission, rests upon the basis that Sherman undertook to act as the agent of both parties in a matter where their interests were, for obvious reasons, to be regarded as conflicting. In such cases equity will, upon the seasonable application of a party, avoid the transaction and this right is conceded, without reference to any actual fraud."

Also in point is the case of *Nekarda* v. *Presberger* (123 App. Div. 418). In that case the plaintiff sued the defendant for the balance of commissions claimed to have been earned as broker in procuring a sale of the defendant's premises, it appearing that the plaintiff was an attorney at law and that the premises had been sold to one of his clients for the benefit of a corporation of which the plaintiff was a director. The court held that the plaintiff bore a relation of trust and confidence both to the nominal and real purchaser, and was not entitled to recover, unless it was shown that the sale had been made with the full knowledge and consent of the purchaser. The court (at p. 420) said: " There is a more serious objection, however, to the plaintiff's recovery which goes to the very root of his claim. At the time he negotiated the contract of sale from defendant to Zamek, he was an attorney of this court and Zamek was one of his clients. Zamek was also the president of a corporation known as the Home Alliance Realty

Company, of which the plaintiff was a director. It appears that the contract of purchase, although made by Zamek, was really made on behalf of the Home Alliance Realty Company and it is certain that the deed of the property was made to that company. Whether the contract was made with Zamek, for whom he was attorney, or for the benefit of the realty company of which he was a director, plaintiff bore to the purchaser a relation of trust and confidence which renders such a contract as he now seeks to enforce illegal and unenforcible, unless it was made with the full knowledge and consent of the purchaser, of which there is no evidence in the case."

There thus having been a breach of the duty owing by the brokers to the plaintiff, the latter is entitled to hold both the brokers and the purchaser, the Hosmer Realty Corporation, of which one of the brokers was an officer, as trustees of the property or its proceeds and any profits derived therefrom. (*Waterbury* v. *Barry,* 145 App. Div. 773.)

It follows that the judgment appealed from should be reversed, with costs, and a new finding made as to the connection of the defendant Hammond with the defendant Hosmer Realty Corporation, and judgment directed for the plaintiff for an accounting of the rents, issues and profits received by the defendants or any of them, and, in addition thereto, directing judgment against the defendants Paul Fischer, Edward H. Hammond and Emma Heinrich, as administratrix of the goods, chattels and credits of Albert Heinrich, deceased, for the sum of $1,400, the commission paid by plaintiff, with interest thereon from the 26th day of January, 1923, together with costs and disbursements.

CLARKE, P. J., MERRELL and BURR, JJ., concur; MARTIN, J., dissents.

MARTIN, J. (dissenting). The trial court properly found that there was no fraud or bad faith on the part of defendants. The offer to sell submitted by the plaintiff and accepted by the purchaser was the best price obtainable.

The plaintiff had advertised the premises for sale; had submitted the proposition to other brokers and was willing to accept the sum of $75,000 for the property, being $5,000 less than he received from the defendants' customer. The plaintiff was not only anxious to sell to any customer, but was not interested in the identity of the purchaser.

The record discloses that this sale was in effect to Mrs. Pelletreau who furnished the money for the purchase of the property and received any profits made upon the sale. The corporation was used for the purpose of taking title when Mrs. Pelletreau might

have taken title in her own name and thus have avoided this whole controversy.

The facts set forth in the record on appeal do not entitle the plaintiff to the relief demanded in the complaint. The judgment should be affirmed.

Judgment reversed, with costs, and judgment directed as indicated in opinion. Settle order on notice.